Roland Tong (State Bar No. 216836)
*roland.tong@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
695 Town Center Dr., Ste 400
Costa Mesa, California 92626
Telephone: (949) 440-6690
Facsimile: (949) 474-6991

Attorneys for Defendants
Tipsy, LLC and Amanda L. Neville

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Tippsy, Inc., a Delaware Corporation, and Genki Ito, and individual,<br><br>            Plaintiffs,<br><br>      v.<br><br>Tipsy, LLC, a New York limited liability company, and Amanda L. Neville, and individual,<br><br>            Defendants. | Case No. 2:24-cv-04025-ODW(SKx)<br><br>**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(3)**<br><br>Filed Concurrently with Notice of Motion to Dismiss, and [Proposed] Order.]<br>Date: August 19, 2024<br>Time: 1:30 p.m.<br>Crtrm.: 5D |

## **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................. 6

II.   PROCEDURAL BACKGROUND ........................................................ 6

III.  FACTUAL BACKGROUND ................................................................ 7

IV.   ARGUMENT ........................................................................................ 9

   A.   CALIFORNIA HAS NO PERSONAL JURISDICTION OVER ANY OF THE DEFENDANTS. ................................................................................ 9

      1.   STANDARD OF REVIEW ........................................................ 9

      2.   Each of the Defendants Has Not Engaged in Continuous and Systematic Contacts in California to Subject Them to California's General Jurisdiction. . 13

      3.   Each of the Defendant's Activities Do Not Subject Them to California's Specific Jurisdiction .................................................................................... 14

      4.   Exercising Personal Jurisdiction Over the Defendants Would Violate Each of Their Due Process Rights. .......................................................................... 17

V.    CONCLUSION ................................................................................... 20

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(3)**

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*AMA Multimedia, LLC v. Wanat*
  970 F.3d 1201 (9th Cir. 2020) .......................................................... 12, 13

*Asahi Metal Indus. Co. v. Superior Court of Cal.*
  480 U.S. 102 (1987) ........................................................................ 18

*Avocent Huntsville Corp., et al. v. Aten International Co., Ltd.*
  552 F.3d 1324 (2008) ..................................................................... 15

*Axiom Foods, Inc. v. Acerchem Int'l. Inc.*
  874 F.3d 1064 (9th Cir. 2017) ......................................................... 13

*Ayla, LLC v. Alya Skin Pty. Ltd.*
  11 F.4th 972, 979 (9th Cir. 2021) ................................................... 12, 13

*Ballard v. Savage*
  65 F.3d 1495 (9th Cir. 1995) ........................................................... 10

*Bancroft & Masters Inc. v. Augusta Nat'l Inc.*
  223 F.3d 1082 (9th Cir. 2000) ......................................................... 11, 15

*Boschetto v. Hansing*
  539 F.3d 1011 (9th Cir. 2008) ......................................................... 13

*Brand v. Menlove Dodge*
  796 F.2d 1070 (9th Cir. 1986) ......................................................... 11

*Burger King Corp. v. Rudzewicz*
  471 U.S. 462 (1985) ........................................................................ 12, 17

*Calder v. Jones*
  465 U.S. 783 (1984) ........................................................................ 12, 13

*Cubbage v. Merchant*
  744 F.2d 665 (9th Cir. 1984) ........................................................... 9

*Data Disc, Inc. v. Systems Technology Associates, Inc*
  557 F.2d 1280 (9th Cir. 1977) ......................................................... 11

*Doe v. Unocal Corp.*
  248 F.3d 915 (9th Cir. 2001) ........................................................... 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
  131 S. Ct. 2846 (2011) .................................................................... 11

*HealthSpot, Inc. v. Computerized Screening, Inc.*
  66 F. Supp. 3d 962 (N.D. Ohio 2014) .............................................. 15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
  466 U.S. 408 (1984) ........................................................................ 11

MANNING | KASS

MK

*Herbal Brands, Inc. v. Photoplaza, Inc*
    72 F.4th 1085 (2023)............................................................................16

*Int'l Shoe Co. v. Washington*
    326 U.S. 310 (1945)......................................................................10, 19

*J.M. Smucker Co. v. Hormel Food Corp.*
    526 F. Supp. 3d 294 (N.D. Ohio 2021) ..............................................15

*Mavrix Photo, Inc. v. Brand Techs., Inc.*
    647 F.3d 1218 (9th Cir. 2011) ............................................................13

*Omeluk v. Langsten Slip & Batbyggeri A/S*
    52 F.3d 267, 270 (9th Cir. 1995).........................................................12

*OMI Holding, Inc. v. Royal Ins. Co. of Canada*
    149 F.3d 1086 (10th Cir. 1998) ..........................................................10

*Perkins v. Benguet Consol. Mining Co.*
    342 U.S. 437 (1952)............................................................................11

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*
    148 F.3d 1355 (Fed. Cir. 1998) ..........................................................15

*Roberts v. Synergistic Int'l, LLC*
    676 F. Supp. 2d 934 (E.D. Cal. 2009) ................................................10

*Roth v. Garcia Marquez*
    942 F.2d 617 (9th Cir. 1991) ........................................................10, 12

*Schwarzenegger v. Fred Martin Motor Co.*
    374 F.3d 797 (9th Cir. 2004) ..................................................11, 12, 13

*Sher v. Johnson*
    911 F.2d 1357 (9th Cir. 1990) ............................................................19

*Shute v. Carnival Cruise Lines*
    897 F.2d 377 (9th Cir. 1990) ..............................................................12

*Sinatra v. National Enquirer, Inc.*
    854 F.2d 1191, 1194 (9th Cir. 1988) ....................................................9

*Slaughter v. Van Cleve*
    2007 U.S. Dist. LEXIS 90947 (C.D. Cal. 2007) ................................11

*SOG Specialty Knives & Tools, Inc. v. Cold Steel, Inc.*
    2008 U.S. Dist. LEXIS 132694 ..........................................................15

*Walden v. Fiore*
    571 U.S. 277 (2014)......................................................................13, 16

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*
    704 F.3d 668 (9th Cir. 2012) ..............................................................13

*Will Co. v. Lee*

MANNING | KASS

47 F.4th 917, 922-23 (9th Cir. 2022)...................................................................16

*Wine Bottle Recycling, LLC v. Niagara Sys. LLC*
2013 U.S. Dist. LEXIS 37273, 9 (N.D. Cal. 2013)...............................................10

*World-Wide Volkswagen Corp. v. Woodson*
444 U.S. 286 (1980).............................................................................................18

*Yahoo! Inc. v. La Ligue Contre Le Racisme*
433 F.3d 1199 (9th Cir. 2006) .........................................................................6, 15

**Statutes**

Cal. Code Civ. Proc.
§ 410.10................................................................................................................10

Fed. R. Civ. P. 12(b)(2) ...................................................................................6, 10

**Federal Statutes**

326 U.S.
§ 316.....................................................................................................................19

**MK** MANNING | KASS

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(3)**

## I.   **INTRODUCTION**

COMES NOW, Defendants Tipsy, LLC ("Tipsy NY") and Amanda L. Neville ("Neville"), by and through undersigned counsel, and respectfully request this Court's dismissal of the Complaint of Plaintiffs Tippsy, Inc. ("Tippsy California") and Genki Ito ("Ito"), in full, for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2).

## II.   **PROCEDURAL BACKGROUND**

Plaintiffs filed the present suit in this Court seeking declaratory relief against a finding of trademark infringement of two registered trademarks belonging to Defendant Neville, a declaration of trademark concurrent use rights, and a relief from trademark infringement by the Defendants. *See* Complaint at 1, *Tippsy Inc. v. Tipsy, LLC*, 2:24-cv-04025-ODW(SKx), D. Cal. filed May 14, 2024. Plaintiffs allege, on information and belief, that "this Court has personal jurisdiction over Defendants because they have made accusations of infringement directed at Plaintiffs within this judicial district…" *Id.* ¶ 8. However, Plaintiffs failed to consider that it is well-established that a Defendant cannot be subject to personal jurisdiction if all the Defendant did was to send a cease and desist letter as a way to assert Defendant's rights. *See Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) ("A cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter." [Cleaned up.]

Plaintiffs further allege, on information and belief, that this Court has personal jurisdiction over Defendants because "Defendants conduct business within this judicial district by advertising, promoting, and selling products in this judicial district; and the causes of action asserted in this Complaint arise out of Defendants' contact with this judicial district." *See* Complaint at 1 ¶ 8. However, the Complaint does not provide any evidence or additional facts to support these pronouncements, and Plaintiffs do not identify what caused them to hold this belief. *See generally Id.*

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(3)**

1  Plaintiffs'' allegation of personal jurisdiction was a one-paragraph conclusory

2  statement devoid of any supporting facts or evidence. *Id.*

3       Plaintiffs' failure to heed the well-established case law against finding of

4  personal jurisdiction for sending cease and desist letters and their one paragraph

5  conclusory allegation of personal jurisdiction should not come as a surprise when

6  one considers Plaintiffs' primary motive in filing this lawsuit in this Court, which is

7  to forum shop. The parties were still in negotiations the day before Plaintiffs filed

8  the lawsuit. *See* Ex. 1 ¶ 27. The day before Plaintiffs filed this lawsuit, Plaintiffs'

9  counsel agreed to the monetary terms of their settlement discussions and asked

10 Defendants' counsel if Defendants are amenable to their proposal about a non-

11 monetary aspect of the dispute. *Id.* Defendants' counsel told Plaintiffs' counsel to

12 contact her at 10am the next day. *Id.* ¶ 20. Instead of contacting her, Plaintiffs'

13 counsel filed this instant lawsuit. *Id.* Plaintiffs hastily and recklessly filed this

14 lawsuit while in the middle of settlement discussions in an attempt to forum shop

15 and gain what Plaintiffs perceive as a tactical advantage to get the resolution they

16 are seeking. *Id.* This Court should not reward Plaintiffs' behavior and should not

17 subject the New York Defendants to jurisdiction in California. Accordingly,

18 Defendants seek dismissal of this matter for lack of personal jurisdiction.

19 **III.  FACTUAL BACKGROUND**

20      Defendant Amanda Neville is an individual residing in Brooklyn, New York.

21 *Id.* ¶ 1. She does not have any assets, bank accounts, security interests, offices, real

22 estate, personal property, employees, personnel, business licenses, business permits,

23 or agent for service of process or for any other purpose in California. *Id.* ¶ 2.  She

24 does not directly solicit business, engage in any other persistent course of conduct or

25 derive any revenue in California. *Id.* ¶ 3. As such, she does not file any state

26 personal income tax returns California. *Id.* ¶ 4. She is the owner, operator, and

27 founder of co-defendant Tipsy, LLC ("Tipsy NY"). *Id.* ¶ 5.

28      Tipsy NY is predominantly a wine merchant located in 584 Myrtle Ave,

MANNING | KASS

Brooklyn, New York offering curated wines and spirits from around the world, wine club memberships, and weekly in-store tastings. *Id.* ¶ 8. Its wine club membership allows members to receive half and full cases of wine every month and discounts on wine purchases. *Id*. ¶ 9. Tipsy NY offers catering services using expert sommeliers at private party events, including corporate parties, parties at home, office happy hours, fundraisers, weddings, and birthdays within New City area. *Id.* ¶ 10. Besides its small wine, beer & spirits store located in Brooklyn, NY, it has a website, Shoptipsy.com, which offers various wines, gifts, spirits, and sake for purchase and shipment all over the United States depending on the regulation of a particular state. *Id.* ¶ 11.

Like Defendant Neville, Tipsy NY also does not have any assets, bank accounts, security interests, offices, real estate, personal property, employees, personnel, business licenses, business permits, or agent for service of process or for any other purpose in California. *Id.* ¶ 12. It only purchases its alcohol inventory from licensed distributors in New York, including its inventory of California wines. *Id.* ¶ 14. It does not directly solicit business, engage in any other persistent course of conduct or derive substantial revenue in California. *Id.* ¶ 15. It does not file any state tax returns California. *Id.* ¶ 13.

Tipsy NY's website is set up such that Tipsy NY does not direct its advertising to any particular state, seek to reach consumers in a particular geographical location or otherwise intentionally seek the benefit of operating in any particular state. *Id.* ¶ 12. The website is published on the Internet and is available to all members of the public with Internet access. *Id.* ¶ 13. The website regularly receives website visitors from locations throughout the United States. *Id.* ¶ 14. The content on the Tipsy NY's website is presented in exactly the same fashion to any Internet visitor, regardless of that visitor's physical location. *Id.* ¶ 15. For example, if a visitor from California accessed the Tipsy NY website with their web browser, that visitor would be presented with the identical content as an Internet visitor from

1   any other state in the United States. *Id.*

2       Should a visitor choose to purchase Tipsy NY's products on its website, they

3   must undertake the process that is set up via its third-party processing system. *Id.* ¶

4   16. After the order is issued, the corresponding products are shipped to the

5   customer, at the customer's direction. Since the customer enters their own shipping

6   address, Tipsy NY has no control over a customer's preferred shipping address. *Id.*

7       Since starting their operation in 2013, Tipsy NY averages about 19,600

8   transactions each year all over the United States. *Id.* ¶ 20. Out of these transactions,

9   only 19 transactions a year happen to be with a customer residing in California from

10  2014-2020. *Id.* From 2014-2020, the California transactions comprise only about

11  0.097% of Tipsy NYs overall transactions. *Id.*

12      In 2021, Tipsy NY had only 2 transactions to California residents. *Id.* ¶ 21.

13  From 2022 to the present, Tipsy had zero transactions to California residents except

14  for a one-off transaction where someone from California purchased a gift card for

15  someone who lives in New York. *Id.* In 2023, Ms. Neville was told that FedEx

16  prohibits shipment of wines to California. *Id.* ¶ 22. Thereafter, Defendants changed

17  their website to indicate that they do not ship wine orders to California. *Id.*

18  **IV.**   **ARGUMENT**

19      Because Defendants are not residents of California, this Court must consider

20  whether the Court can lawfully assert personal jurisdiction over them.

21      **A.**   **CALIFORNIA HAS NO PERSONAL JURISDICTION OVER**

22          **ANY OF THE DEFENDANTS.**

23          **1.**   **STANDARD OF REVIEW**

24      "When a defendant challenges the sufficiency of personal jurisdiction, the

25  plaintiff bears the burden of establishing personal jurisdiction over the defendant."

26  *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1194 (9th Cir. 1988) (citing

27  *Cubbage v. Merchant,* 744 F.2d 665, 667 (9th Cir. 1984), *cert. denied,* 470 U.S.

28  1005 (1985)). "The Court may consider evidence presented in affidavits and

declarations in determining personal jurisdiction." *Wine Bottle Recycling, LLC v. Niagara Sys. LLC,* 2013 U.S. Dist. LEXIS 37273, 9 (N.D. Cal. 2013) (citing *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2001)).

In responding to a motion to dismiss based upon Fed. R. Civ. P. 12(b)(2), it is the plaintiff's burden to establish a *prima facie* case of personal jurisdiction over the defendant in the forum state. *Roberts v. Synergistic Int'l, LLC,* 676 F. Supp. 2d 934, 940 (E.D. Cal. 2009) (citing *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995)). A plaintiff may satisfy this burden only by demonstrating sufficient evidence to support the propriety of the exercise of personal jurisdiction over a defendant. *Id.* at 940-941. If the plaintiff succeeds in making the *prima facie* showing, the burden shifts to the defendant, who "must [then] present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *Roberts,* 676 F. Supp. 2d at 941 (citing *OMI Holding, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998)).

1. California's Long Arm Statute

California's "long arm" statute, giving California Courts jurisdiction over nonresident defendants, reads, "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Code Civ. Proc. § 410.10. The Ninth Circuit recognizes that, "[s]ince California's jurisdictional statute is coextensive with federal due process requirements, the jurisdictional inquiries under state law and federal due process merge into one analysis." *Roth v. Garcia Marquez,* 942 F.2d 617, 620 (9th Cir. 1991). In order for a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific. *Slaughter v. Van Cleve,* 2007 U.S. Dist.

1   LEXIS 90947, 8 (C.D. Cal. 2007).

2        2. General Jurisdiction

3        Explaining the standard for general jurisdiction, the Ninth Circuit has held, "if

4   the nonresident defendant's activities within a state are "substantial" or "continuous

5   and systematic," there is a sufficient relationship between the defendant and the

6   state to support jurisdiction even if the cause of action is unrelated to the defendant's

7   forum activities." *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d

8   1280, 1286 (9th Cir. 1977) (citation omitted). The United States Supreme Court has

9   recently reiterated that the defendant's contacts must be "so 'continuous and

10  systematic' as to render them essentially at home in the forum State" for a court to

11  exercise general jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown,*

12  131 S. Ct. 2846, 2856 (2011). In *Schwarzenegger v. Fred Martin Motor Co.,* the

13  Court of Appeals for the Ninth Circuit clearly laid out the standard for a finding of

14  general personal jurisdiction:

15              For general personal jurisdiction to exist over a

16              nonresident defendant, the defendant must engage in

17              "continuous and systematic general business contacts,"

18              *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466

19              U.S. 408, 416 (1984) (citing *Perkins v. Benguet Consol.*

20              *Mining Co.,* 342 U.S. 437 (1952), that "approximate

21              physical presence" in the forum state. *Bancroft &*

22              *Masters Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086

23              (9th Cir. 2000). This is an exacting standard . . . *See*

24              *Brand v. Menlove Dodge,* 796 F.2d 1070, 1073 (9th Cir.

25              1986) (collecting cases where general jurisdiction was

26              denied despite defendants' significant contacts with

27              forum). *Schwarzenegger v. Fred Martin Motor Co.,* 374

28              F.3d 797, 801 (9th Cir. 2004) (citations in original)

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(3)**

(alterations added).

### 3. Specific Jurisdiction

A three-part test has been articulated by the Ninth Circuit for "specific," or limited, jurisdiction: "1) the nonresident defendant must have *purposefully availed* himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must *arise out of* or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be reasonable." *Roth,* 942 F.2d at 621 (citing *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 381 (9th Cir. 1990) (emphasis original), *rev'd on other grounds,* 499 U.S. 585 (1991)). The plaintiff bears the burden of satisfying the first and second prongs of the test. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004). Only once established does the burden shift to the defendant "to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-78 (1985)); *AMA Multimedia, LLC v. Wanat,* 970 F.3d 1201, 1208 (9th Cir. 2020) ("AMA"). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law" and the motion to dismiss must be granted. *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th Cir. 1995).

The first prong of the minimum contacts test requires a plaintiff to establish purposeful availment or purposeful direction, which turns on "the nature of the underlying claims." *Ayla, LLC v. Alya Skin Pty. Ltd.,* 11 F.4th 972, 979 (9th Cir. 2021) ("Ayla"). Copyright infringement cases, such as here, sound in tort, and courts therefore apply the "purposeful direction" analysis. *AMA,* 970 F.3d at 1209. "Where allegedly tortious conduct takes place outside the forum and has effects inside the forum, [the Ninth Circuit] has examined purposeful direction using an 'effects test' based on *Calder v. Jones,* 465 U.S. 783 (1984)." *Id.* Under the "effects" test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is

likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Calder v. Jones,* 465 U.S. 783 (1984)). "[I]f the plaintiff fails at the first step [of demonstrating purposeful direction], the jurisdictional inquiry ends and the case must be dismissed." *Boschetto v. Hansing,* 539 F.3d 1011, 1016 (9th Cir. 2008) ("Boschetto").

"For purposes of jurisdiction, a defendant acts intentionally when he acts with 'an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *AMA,* 970 F.3d at 1209 (citing *Schwarzenegger,* 374 F.3d at 806). As to the second element, the express aiming inquiry requires "something more" than a foreign act with foreseeable effects in the forum state. *Axiom Foods, Inc. v. Acerchem Int'l. Inc.,* 874 F.3d 1064, 1070 (9th Cir. 2017) (citing *Washington Shoe Co. v. A-Z Sporting Goods Inc.,* 704 F.3d 668, 675 (9th Cir. 2012), *abrogated on other grounds* ("Calder cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction." (citation omitted))). "Express aiming requires more than the defendant's awareness that the plaintiff is alleged to have harmed resides in or has strong ties to the forum, because 'the plaintiff cannot be the only link between the defendant and the forum.'" *Ayla,* 11 F.4th at 980 (quoting *Walden v. Fiore,* 571 U.S. 277, 285 (2014)). Moreover, "the 'expressly aimed' requirement is a necessary but not sufficient condition, alone, for jurisdiction. In order to establish specific jurisdiction, a plaintiff must also show that jurisdictionally significant harm was suffered in the forum state." *Mavrix,* 647 F.3d at 1231.

**2.**   **Each of the Defendants Has Not Engaged in Continuous and Systematic Contacts in California to Subject Them to California's General Jurisdiction.**

Each of the Defendants' contacts in California falls way short of being substantial or continuous and systematic. Both Defendants are residents of New York.  None of them have any assets, bank accounts, security interests, offices, real

MANNING | KASS

estate, personal property, employees, personnel, business licenses, business permits, or agent for service of process or for any other purpose in California. *See generally* Ex. 1 ¶ 2-4. Tipsy NY only purchases its alcohol inventory from licensed distributors located in New York, including its inventory of California wines. *Id.* ¶ 14.

Both Tipsy NY and Defendant Neville do not directly solicit business, engage in any other persistent course of conduct, or derive substantial revenue in California. *Id.* ¶ 3 and 15. Since starting their operation in 2013, Tipsy NY averages about 19,600 transactions each year all over the United States. *Id.* ¶ 20. Out of these transactions, only 19 transactions a year happen to be with a customer residing in California from 2014-2020. *Id.* From 2014-2020, the California transactions comprise only about 0.097% of Tipsy NYs overall transactions. *Id.*

In 2021, Tipsy NY had only 2 transactions to California residents. *Id.* ¶ 21. From 2022 to the present, Tipsy had zero transactions to California residents except for a one-off transaction where someone from California purchased a gift card for someone who lives in New York. *Id.* In 2023, Ms. Neville was told that FedEx prohibits shipment of wines to California. *Id.* ¶ 22. Thereafter, Defendants changed their website to indicate that they do not ship wine orders to California. *Id.*

It is unimaginable for anyone to consider the contacts of any of the Defendants as being so 'continuous and systematic' as to render them "essentially at home in the forum State" for a court to exercise general jurisdiction.

### 3. <u>Each of the Defendant's Activities Do Not Subject Them to California's Specific Jurisdiction.</u>

The connections or conduct Plaintiff could use to allege specific jurisdiction are the Defendants' sending of the cease and desist letter and their website that is accessible to California residents.

<u>Cease and Desist Letter</u>

Generally, cease and desist letters, by themselves, are insufficient to establish

personal jurisdiction. In *Yahoo! Inc. v. La Ligue Contre Le Racisme*, the court held that "[a] cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) (quoting *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998); see also, *HealthSpot, Inc. v. Computerized Screening, Inc.*, 66 F. Supp. 3d 962, 969 (N.D. Ohio 2014). The court also offered an exception to the general rule, holding that if the cease and desist letter is "abusive, tortious or otherwise wrongful" such a letter could give rise to personal jurisdiction. *Id.* Specifically, court said, ". . . [the letter sent in *Yahoo!*] was more like a normal cease and desist letter than the letters at issue in *Bancroft & Masters*, for it was not abusive, tortious or otherwise wrongful. Rather, it simply alerted Yahoo! to its view of French law and stated its intent to file suit in France to enforce that law against Yahoo!." *Id.* at 1209; *see also*, *SOG Specialty Knives & Tools, Inc. v. Cold Steel, Inc.*, 2008 U.S. Dist. LEXIS 132694, 5-6. Additionally, "[A]ctions that go beyond merely sending cease and desist letters may support specific personal jurisdiction, such as judicial or extra-judicial enforcement activities within the forum, entering into an exclusive license agreement, or another undertaking imposing enforcement obligations on a party residing or regularly doing business in the forum. *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 303 (N.D. Ohio 2021) (citing *Avocent Huntsville Corp., et al. v.Aten International Co., Ltd.* , 552 F.3d at 1334 (2008).)

Here, Defendants merely sent Plaintiffs a cease and desist letter after Defendant Neville received a call at the store from a confused customer asking if Plaintiffs' sake company is related to her business on or around November 2023. *Id.* ¶ 17.  Between November 2023 and January 2024, the Plaintiffs did not respond despite Defendant Neville's repeated follow ups. The Plaintiffs finally responded, but refused to cooperate with her demands. *Id.* ¶ 18. Thus, on or around February 2024, Defendant Neville retained a lawyer to send another cease and desist and try

to negotiate an agreement. *Id.* Defendants merely asserted their trademark rights by asking Plaintiffs to stop infringing. Clearly, there is nothing abusive, tortious, or wrongful about asserting one's rights. Considering the absence of their contacts, activities, and conduct in California, Defendants cannot be hailed in California court simply for sending cease and desist letters.

<u>Defendants' Website</u>

"Due process requires that a defendant be hauled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore,* 571 U.S. 277, 286 (2014) (citations omitted). The "[m]ere passive operation of a website is insufficient to demonstrate express aiming. . . . Rather, the operator must have both actively 'appealed to' and 'profited from' an audience in that forum." *Will Co. v. Lee,* 47 F.4th 917, 922-23 (9th Cir. 2022) ("Will Co.") (internal citations and brackets omitted).

"Operation of an interactive website does not, by itself, establish express aiming. Otherwise, every time a seller offered a product for sale through an interactive website, the seller would be subjecting itself to specific jurisdiction in every forum in which the website was visible, whether or not the seller actually consummated a sale. That result would be too broad to comport with due process." *Herbal Brands, Inc. v. Photoplaza, Inc.* 72 F.4th 1085, 1091 (2023). "But operating a website "in conjunction with 'something more'—conduct directly targeting the forum—is sufficient" to satisfy the express aiming prong. *Id.* Sales of physical products into a forum via an interactive website can be sufficient to establish that a defendant expressly aimed its conduct at the forum, provided that two key elements are present. First, the sales must occur as part of the defendant's regular course of business instead of being "random, isolated, or fortuitous." *Id at 1094.* Second, the defendant must exercise some level of control over the ultimate distribution of its products beyond simply placing its products into the stream of commerce. *Id.*

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(3)**

Defendants' website would not satisfy the two elements required by *Herbal Brands* and thus would not satisfy the express aiming prong of the *Calder* test. From 2022 to the present, Tipsy had **zero** transactions to California residents except for a one-off transaction where someone from California purchased a gift card for someone who lives in New York. *Id.* Sales in California is not part of Defendants' regular course of business. It's one-off transaction is random, isolated, or fortuitous.

Next, Defendants did exercise control to avoid shipments to California. In 2023, Ms. Neville was told that FedEx prohibits shipment of wines to California. *Id.* ¶ 22. Thereafter, Defendants changed their website to indicate that they do not ship wine orders to California. *Id.* Defendants did not expressly aim at Californians. In fact, Defendants took an extra step and intentionally avoided sales from Californians by telling them they do not ship wines to California. This resulted in Defendants receiving **zero** sales orders from California.

Defendants' website does not constitute "something more" to establish express aiming because there is no evidence that Defendants specifically targeted California. Because Plaintiffs cannot establish express aiming, Plaintiffs cannot establish purposeful availment, which is required for specific jurisdiction. This case should be dismissed for lack of both general and specific jurisdiction.

**4.** **Exercising Personal Jurisdiction Over the Defendants Would Violate Each of Their Due Process Rights.**

Even if there were sufficient jurisdictional contacts in this matter, which there are not, Defendant may still "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985). The Court looks at these factors together to determine whether jurisdiction in California "would be so unreasonable as to violate due process." *Id.* When evaluating the facts of a case, a court must work to ensure that a defendant's "conduct and connection with the forum State are such that he

1  should reasonably anticipate being hailed into court there." *World-Wide Volkswagen*

2  *Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

3      In determining whether or not the exercise of jurisdiction over a non-resident

4  defendant is permissible under the Due Process Clause of the Constitution, a court

5  considers: [T]he burden on the defendant, the interests of the forum State, and the

6  plaintiff's interest in obtaining relief. It must also weigh in its determination 'the

7  interstate judicial system's interest in obtaining the most efficient resolution of

8  controversies; and the shared interest of the several States in furthering fundamental

9  substantive social policies.' *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480

10  U.S. 102, 105 (1987) (quoting *World-Wide Volkswagen,* 444 U.S. at 292).

11      *1. Defendants' Purposeful Interjection into California Has Been Minimal*

12      Neither of the Defendants has significantly interjected themselves into

13  California through sales, advertising, or any other targeted business activity. Ex. 1 ¶

14  3. Defendants do not derive significant revenue from sales in California. *Id.* The

15  minimal presence Defendants have in California is online only and happens at

16  random as visitors search for goods via Tipsy NY's website. *Id.* ¶ 21, 22. Because

17  Defendants' presence in the purported forum state is so minimal, adjudicating a

18  claim against any of the Defendants in California is unreasonable and inconsistent

19  with principles of "fair play."

20      *2. Defending Plaintiff's Claims in California Would Be Burdensome*

21      The expense and burden of travelling approximately 2,800 miles from New

22  York to appear in this California court, likely several times, will be substantial. *Id.* ¶

23  25. Expending such funds on merely accessing the forum to defend itself,

24  Defendants would be placed at a severe disadvantage in comparison to the Plaintiffs,

25  whose principal place of business operations is in California. *Id.* The burden

26  imposed upon the Defendants to litigate in California is so comparatively unfair that

27  it would rise to the level of a violation of due process.

28

MANNING | KASS

*3. Plaintiffs' Interest in Convenience Does Not Outweigh Goals of Fair Play and Substantial Justice*

While trying the case in California would be more convenient for the Plaintiffs, exercising jurisdiction over a defendant must not "offend traditional notions of fair play and substantial justice." *Int'l Shoe,* 326 U.S. at 316. The costs imposed upon Defendants would be severe if the instant case is heard in California, placing the Defendants at a real and significant disadvantage as compared to the Plaintiffs. Such a burden offends the traditional notions of fair play and outweighs the Plaintiffs' interests in trying their claims in a forum that is exclusively convenient to them.

*4. Trying Plaintiffs' Case in California Would Cause Inefficiency*

Trying a case against Defendants would cause substantial judicial inefficiency. Defendants' business, records, and operations are all located in New York, as are all parties likely to be deposed in the instant case. Trying the case in a forum so distant from all operations of the Defendants is likely to increase inefficiency and unnecessarily slow the judicial process. This factor increases the unreasonableness of exercising personal jurisdiction in a California court.

*5. Both States Bear Interest in Adjudicating the Case*

According to the Ninth Circuit, more than one state can possess an interest in the resolution of a case when the two parties reside in different forums. *Sher v. Johnson,* 911 F.2d 1357, 1364 (9th Cir. 1990). California, in this case, bears an interest in adjudicating cases that protect its residents and businesses from infringement on their intellectual property. New York, likewise has an interest in regulating the operation of businesses established in their state and preventing intellectual property infringement. In sum, jurisdiction over Defendant offends notions of due process. Jurisdiction cannot be properly maintained.

# V.    <u>CONCLUSION</u>

Plaintiff fails to demonstrate that this Court may justifiably exercise personal jurisdiction over any of the Defendants. For the reasons articulated above, Defendants respectfully request that this Court dismiss this action in full.

Respectfully submitted,

DATED:  July 17, 2024          **MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**


By:  _____/s/ Roland Tong_____
Roland Tong
Attorneys for Defendants
Tipsy, LLC and Amanda L. Neville

# DECLARATION

Roland Tong (State Bar No. 216836)
    *roland.tong@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
695 Town Center Dr., Ste 400
Costa Mesa, California 92626
Telephone: (949) 440-6690
Facsimile: (949) 474-6991

Attorneys for Defendants
Tipsy, LLC and Amanda L. Neville

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Tippsy, Inc., a Delaware Corporation, and Genki Ito, and individual,<br><br>Plaintiffs,<br><br>v.<br><br>Tipsy, LLC, a New York limited liability company, and Amanda L. Neville, and individual,<br><br>Defendants. | Case No. 2:24-cv-04025-ODW(SKx)<br><br>**DECLARATION OF DEFENDANT AMANDA L. NEVILLE IN SUPPORT OF DFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

I, Amanda L. Neville, declare as follows:

1.    I am an individual residing in Brooklyn, New York and I am a named Defendant in this case.  I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.

2.    I do not have any assets, bank accounts, security interests, offices, real estate, personal property, employees, personnel, business licenses, business permits, or agent for service of process or for any other purpose in California.

3.    I do not directly solicit business, engage in any other persistent course of

1   conduct or derive any revenue in California.

2   4.      I do not file any state personal income tax returns California.

3   5.      I am the owner, operator, and founder of Tipsy, LLC.

4   6.      I applied for a federal trademark registration for TIPSY (and design) on July

5   14, 2020, which subsequently was registered on August 16, 2022 with Registration

6   No. 6821747.

7   7.      I also applied for a federal trademark registration for the word mark for

8   TIPSY on September 12, 2022, which subsequently registered on October 17, 2023

9   with Registration No. 7194417.

10  8.      Founded and first opened in 2013, Tipsy, LLC is a wine and spirits merchant

11  located in 584 Myrtle Ave, Brooklyn, New York offering curated wines and spirits

12  from around the world, wine club memberships, and weekly in-store tastings.

13  9.      Its wine club membership allows members to receive half and full cases of

14  wine every month and discounts on wine purchases.

15  10.     Tipsy LLC offers educational tastings using expert sommeliers at private

16  party events, including corporate parties, parties at home, office happy hours,

17  fundraisers, weddings, and birthdays within New York City area.

18  11.     Besides its small wine and spirits store located in Brooklyn, NY, it has a

19  website, Shoptipsy.com, which offers various wines, gifts, spirits, and sake for

20  purchase that may be shipment all over the United States depending on the

21  regulation of a particular state.

22  12.     Tipsy LLC does not have any assets, bank accounts, security interests, offices,

23  real estate, personal property, employees, personnel, business licenses, business

24  permits, or agent for service of process or for any other purpose in California.

25  13.     Tipsy LLC does not file any state income tax returns California.

26  14.      Tipsy LLC only purchases its alcohol inventory from licensed distributors

27  located in New York, including its inventory of California wines.

28  15.     Tipsy LLC's website does not direct its advertising to any particular state,

**DECLARATION OF DEFENDANT AMANDA L. NEVILLE IN SUPPORT OF DFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

1   seek to reach consumers in a particular geographical location, or otherwise
2   intentionally seek the benefit of operating in any particular state. Tipsy LLC does
3   not directly solicit business, engage in any other persistent course of conduct or
4   derive substantial revenue in California.

5   16.     The website is published on the Internet and is available to all members of the
6   public with Internet access.

7   17.     The website regularly receives website visitors from locations throughout the
8   United States.

9   18.     The content on the Tipsy LLC's website is presented in exactly the same
10  fashion to any Internet visitor, regardless of that visitor's physical location. For
11  example, if a visitor from California accessed the Tipsy LLC website with their web
12  browser, that visitor would be presented with the identical content as an Internet
13  visitor from any other state in the United States.

14  19.     Should a visitor choose to purchase Tipsy LLCs products on its website, they
15  must undertake the process that is set up via their third-party processing system.
16  After the order is issued, the corresponding products are shipped to the customer, at
17  the customer's direction. Since the customer enters their own shipping address,
18  Tipsy LLC has no control over a customer's preferred shipping address.

19  20.     Since starting operation in 2013, Tipsy LLC averages about 19,600
20  transactions each year all over the United States.  Out of these transactions, only an
21  average of 19 transactions a year happen to be with a customer residing in California
22  from 2014-2020.  From 2014-2020, the California transactions comprise only about
23  0.097% of Tipsy LLC's overall transactions.

24  21.     In 2021, Tipsy LLC had only 2 transactions to California residents.  From
25  2022 to the present, Tipsy had zero sales transactions to California residents except
26  for a one-off transaction where someone from California purchased a gift card for
27  someone who lives in New York.

28  22.     In 2023, I was told that FedEx prohibits shipment of wines to California.

MANNING | KASS

1   Thereafter, I changed our website to indicate we do no ship wine orders to

2   California.

3   23.     In light of all of the above, Tipsy LLC and I have insufficient contacts,

4   connections, or conduct in California to subject us to the jurisdiction of California's

5   courts, including this court.

6   24.     This court is about 2,800 miles from the Defendants.  The expense and burden

7   of travelling approximately 2,800 miles from New York to appear in this California

8   court, likely several times, will be substantial. Defendants would be placed at a

9   severe disadvantage in comparison to the Plaintiffs, whose principal place of

10  business operations is in California. The burden imposed upon the us to litigate in

11  California is so comparatively unfair that it would rise to the level of a violation of

12  due process.

13  25.     On or around November 2023, I received a call at the store from a confused

14  customer asking if Plaintiffs sake company is related to my business.  I then sent a

15  Cease and Desist letter to the Plaintiffs shortly thereafter.

16  26.     From November 2023 to January 2024, the Plaintiffs did not respond despite

17  my repeated follow ups. The Plaintiffs finally responded but refused to cooperate

18  with my demands.  Thus, on or around February 2024, I retained a lawyer to send a

19  cease and desist and try to negotiate an agreement. The same cease and desist

20  became the basis of Plaintiffs' instant lawsuit seeking declaratory relief of non-

21  infringement, among other things.

22  27.     We were still in negotiations with Plaintiffs the day before Plaintiffs filed this

23  lawsuit.  The day before Plaintiffs filed this lawsuit, Plaintiffs' counsel agreed to the

24  monetary terms of our settlement discussions and asked Defendants' counsel if

25  Defendants are amenable to their proposal about a non-monetary aspect of the

26  dispute.

27  28.     Defendants' counsel told Plaintiffs' counsel to contact her at 10am the next

28  day.  Instead of contacting her, Plaintiffs' counsel filed this instant lawsuit. In my

4889-5544-0849.2                            4                    Case No. 2:24-cv-04025-ODW(SKx)

**DECLARATION OF DEFENDANT AMANDA L. NEVILLE IN SUPPORT OF DFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

1 | opinion, Plaintiffs hastily and recklessly filed this lawsuit while in the middle of

2 | settlement discussions in an attempt to forum shop and to gain what Plaintiffs

3 | perceive as a tactical advantage to get the resolution they are seeking.

4 |      I declare under penalty of perjury under the laws of the United States of

5 | America that the foregoing is true and correct.

6 |

7 | DATED: July 17, 2024              AMANDA L. NEVILLE

8 |

9 |

10 |

11 | By: _____

12 |           Defendant and Owner of Co-

13 |           Defendant Tipsy, LLC

**MANNING | KASS**

DECLARATION OF DEFENDANT AMANDA L. NEVILLE IN SUPPORT OF DFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 801 S. Figueroa St, 15th Floor, Los Angeles, CA 90017-3012.

On July 17, 2024, I served true copies of the following document(s) described as **DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(3)** on the interested parties in this action as follows:

R. Joseph Trojan
Dylan C. Dang
Francis Wong
**TROJAN LAW OFFICES**
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone: 310-777-8399
Facsimile: 310-777-8348
trojan@trojanlawoffices.com
dang@trojanlawoffices.com
wong@trojanlawoffices.com
Attorneys for Plaintiffs,
Tippsy, Inc. and Genki Ito

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address veronica.price@manningkass.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 17, 2024, at Los Angeles, California.

/s/ Veronica Price
—————————————————
Veronica Price

MANNING | KASS