O
JS-6

# United States District Court
# Central District of California

TIPPSY, INC. et al.,

                Plaintiffs,

     v.

TIPSY, LLC et al.,

                Defendants.

Case № 2:24-cv-04025-ODW (SKx)

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [16]**

## I.    INTRODUCTION

Plaintiffs Tippsy, Inc. ("Tippsy California") and Genki Ito filed this action against Defendants Tipsy, LLC ("Tipsy New York") and Amanda L. Neville to resolve a trademark dispute. (Compl., ECF No. 1.) Defendants now move to dismiss this action for lack of personal jurisdiction. (Mot. Dismiss ("Motion" or "Mot."), ECF No. 16-1.) For the reasons discussed below, the Court **GRANTS** Defendants' Motion.[1]

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II.    BACKGROUND[2]

Tippsy California, a Delaware Corporation with its principal place of business in California, specializes in the sale of Japanese alcoholic beverages, including sake and sake-related goods, such as sake glasses, cups, carafes, snacks, and warmer bottles. (Compl. ¶¶ 1–2.)  Tippsy California has offered these beverages and goods in its store and on its website since November 2018.  (*Id.* ¶¶ 2–3.)  Ito is Tippsy California's Chief Executive Officer and owner.  (*Id.* ¶ 1.)

Tipsy New York, a New York limited liability company, has operated a wine store in New York since 2013.  (Decl. Amanda L. Neville ISO Mot. ("Neville Decl.") ¶¶ 1, 5, 8, ECF No. 16-1; *see* Compl. ¶¶ 4–5.)  Tipsy New York also hosts a website, where it offers wines and other goods in specified U.S. states.  (Neville Decl. ¶ 11.) Neville, who resides in New York, is Tipsy New York's owner, operator, and founder. (Compl. ¶ 5; Neville Decl. ¶¶ 1, 5.)  According to Neville, from 2014 to 2020, Tipsy New York averaged roughly 19,600 transactions each year.  (Neville Decl. ¶ 20.)  On average, nineteen of these yearly sales—representing less than one-tenth of one percent of sales—were to California residents.  (*Id.*)  Per Neville, Tipsy New York made two sales to California residents in 2021, and since 2022, has made zero such sales, except for one gift card sale to a California resident for a New York resident.  (*Id.* ¶ 21.)  Tipsy New York's website previously listed California as one of six U.S. states and territories to which it shipped wine.  (*See* Decl. R. Joseph Trokan ISO Opp'n ("Trokan Decl.") Ex. 1, ECF Nos. 20-1 to 20-2; Decl. Amanda L. Neville ISO Reply ("Neville Reply Decl.") ¶ 3, ECF No. 21.)   However, Neville declares that in 2023 she removed California as a shipping option from Tipsy New York's website after she learned that FedEx prohibits wine shipments to California.  (Neville Decl. ¶ 22; Neville Reply Decl. ¶¶ 4–5.)

---

[2] All factual references derive from Tippsy California and Ito's Complaint or attached exhibits, unless otherwise noted, and well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In 2023 and 2024, Tipsy New York, Neville, and their counsel sent cease-and-desist letters to Tippsy California and Ito, alleging that they were infringing Tipsy New York and Neville's trademarks. (Compl. ¶¶ 5, 14, 21, 35, 49; Neville Decl. ¶¶ 25–26.) Later, Tippsy California and Ito filed this action in the Central District of California. (*See* Compl.) They assert five causes of action: three seeking declaratory relief of trademark non-infringement, (*id.* ¶¶ 10–46), one seeking declaratory relief of trademark concurrent use rights, (*id.* ¶¶ 47–53), and one alleging trademark infringement, (*id.* ¶¶ 54–57). Tipsy New York and Neville moved to dismiss this case for lack of personal jurisdiction. (Mot. 6.) The Motion is fully briefed. (Opp'n Mot. ("Opp'n"), ECF No. 20; Reply ISO Mot. ("Reply"), ECF No. 21.)

### III.    LEGAL STANDARD

Pursuant to Federal Rule ("Rule") of Civil Procedure 12(b)(2), a party may seek dismissal of an action for lack of personal jurisdiction. Once a party seeks dismissal under Rule 12(b)(2), the plaintiff has the burden of demonstrating that the court's exercise of personal jurisdiction is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). Where the motion is based on written materials rather than an evidentiary hearing, as here, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Accordingly, a court only "inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995).

Although a plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977), "uncontroverted allegations in [the] complaint must be taken as true," *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Courts resolve factual disputes in the plaintiff's favor. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

A federal district court may exercise personal jurisdiction over a non-resident defendant if the defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110–11 (9th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A district court "may exercise either general or specific personal jurisdiction over nonresident defendants." *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987).

## IV.    DISCUSSION

Tippsy California and Ito do not contend that this Court has general personal jurisdiction over Tipsy New York and Neville. (*See* Opp'n; *see also* Mot. 13–14; Reply 1); *Star Fabrics, Inc. v. Ross Stores, Inc.*, No. 2:17-cv-05877-PA (PLAx), 2017 WL 10439691, at *3 (C.D. Cal. Nov. 20, 2017) ("Where a party fails to oppose arguments made in a motion, a court may find that the party has conceded those arguments . . . ."). Instead, the parties dispute whether the Court has specific personal jurisdiction over Tipsy New York and Neville. (*See* Mot. 14–16; Opp'n 1–8; Reply 1.)

The Ninth Circuit has formulated three requirements for establishing specific jurisdiction over a non-resident defendant:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (cleaned up). While "[t]he plaintiff bears the burden on the first two prongs," once these prongs are met, "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021). The Court begins with the first prong.

### A.    Purposeful Direction and Purposeful Availment

Under the first prong, "to be subject to specific jurisdiction the defendant must purposefully direct its activities toward the forum state, purposefully avail itself of the privileges of conducting activities there, or engage in some combination thereof." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088 (9th Cir. 2023) (internal quotation marks omitted), *cert denied*, 144 S. Ct. 2561 (2024).  Whether a court evaluates "a defendant's contacts under the purposeful direction or purposeful availment test turns on the nature of the underlying claims." *Id.* (internal quotation marks omitted).  "Outside the declaratory judgment context," the Ninth Circuit has found "the purposeful direction framework is most applicable" for trademark infringement claims. *Id.* (collecting cases).

Recently, the Ninth Circuit commented that the "doctrinal dichotomy" created by these two tests "could be an ill-fit for evaluating a declaratory judgment case in which the traditional roles of plaintiff and defendant are reversed." *Id.* at 1089.  In *Impossible Foods*, the Ninth Circuit noted that this is "especially" the case where "the defendant's actions were largely taken from *within* the state." *Id.*  Therefore, in that case—where the defendant company had operated out of the forum state for years and its sole member maintained a residence and workspace and conducted his business activities on behalf of the company in the forum state—the Ninth Circuit collapsed the purposeful availment and purposeful direction tests to inquire into the defendant's "purposefulness vis-à-vis the forum state, ensuring that defendants are not haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (internal quotation marks omitted).

However, this case is unlike *Impossible Foods*, and the Court finds it appropriate to use the traditionally applied purposeful direction test for trademark infringement. *See, e.g.*, *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1035 (9th Cir. 2023); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090–91 (9th Cir. 2023).  First, this case does not solely concern trademark

non-infringement, but also a claim for trademark infringement.  (*See* Compl. ¶¶ 54–57.) Second, the parties agree that the purposeful direction test applies.  (*See* Mot. 12–13; Opp'n 1.)  Finally, this case is distinct from the unique circumstances of *Impossible Foods*, where the Ninth Circuit found the "doctrinal dichotomy" was "especially" unhelpful: where "the defendant's actions were largely taken from *within* the state." *Impossible Foods*, 80 F.4th at 1089.  While Tipsy New York's past sales and shipments to California are relevant, Tippsy California and Ito do not allege that Tipsy New York and Neville sold their products from within California or ever held their headquarters or residences there.   (*See* Compl.); *Impossible Foods*, 80 F.4th at 1089, 1091 (concluding that defendant's "trademark building activities" in the forum state "are sufficient to satisfy" the first prong).  Accordingly, as the Ninth Circuit has done in some declaratory judgment trademark cases, the Court applies the purposeful direction test.  *Cf. San Diego Cnty. Credit Union*, 65 F.4th at 1035 (analyzing purposeful direction in declaratory judgment non-infringement action).

To determine whether a defendant "purposefully directed" its activities toward the forum, courts apply the "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984).  *Herbal Brands*, 72 F.4th at 1091.  That "test asks whether the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (internal quotation marks omitted).

### 1. *Intentional Act*

In their Complaint, Tippsy California and Ito identify at least one intentional act by Tippsy New York and Neville: Tipsy New York's California sales.  (Compl. ¶ 8); *see Herbal Brands*, 72 F.4th at 1091 (finding defendants' sale of products to forum state residents to be an intentional act).

### 2. *Expressly Aiming*

Tipsy New York and Neville argue that they "did not expressly aim their conduct at" California through their website. (Reply 4; *see* Mot. 14–16.) Tippsy California and Ito disagree.[3] (Opp'n 1–4.)

The Ninth Circuit has said that "operation of an interactive website does not, by itself, establish express aiming." *Herbal Brands*, 72 F.4th at 1091. However, "operating a website in conjunction with something more—conduct directly targeting the forum—is sufficient to satisfy the express aiming prong." *Id.* at 1092 (internal quotation marks omitted). Therefore, in *Herbal Brands*, the Ninth Circuit held "that if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant 'expressly aimed' its conduct at that forum." *Id.* at 1093. Whether a sale is in "the defendant's regular course of business instead of being random, isolated, or fortuitous," is a "case-specific question" based on "factors such as the seller's identity (individual or a business entity), the nature of the website used, the defendant's total volume of online sales including sales outside the forum, the number or variety of products offered on the defendant's website, and the defendant's online advertising." *Id.* at 1094 (internal quotation marks omitted). Moreover, "the defendant must exercise some level of control over the ultimate distribution of its products beyond simply placing its products into the stream of commerce." *Id.* The Court evaluates both factors.

---

[3] In the Complaint, Tippsy California and Ito also allege that this Court has personal jurisdiction over Tipsy New York and Neville, in part, "because they have made accusations of infringement directed at [Tippsy California and Ito] within this judicial district." (Compl. ¶ 8.) In the Motion, Tipsy New York and Neville contend that sending cease-and-desist letters to Tippsy California and Ito does not establish personal jurisdiction. (Mot. 14–16.) Tippsy California and Ito do not argue otherwise. (*See* Opp'n.) Therefore, the Court finds these letters do not establish personal jurisdiction. *See Impossible Foods*, 80 F.4th at 1091 (noting "that in the usual case, a cease and desist letter is not in and of itself sufficient to establishing personal jurisdiction over the sender of the letter" (alteration and internal quotation marks omitted)); *Star Fabrics, Inc.*, 2017 WL 10439691, at *3 (holding that courts may deem unopposed arguments waived).

a. Regular Course of Business

The parties disagree about the implications of the Ninth Circuit's ruling in *Herbal Brands* and the relevance of Tipsy New York 's wine sales and shipments to California before 2022.  (*See* Mot. 16–17; Opp'n 1–6; Reply 3–7.)  First, the parties dispute the relevance of the "the volume of sales" from the express aiming analysis.  (*See* Opp'n 5–6; Reply 3–4.)  Second, Tippsy California and Ito assert that Tipsy New York's pre-2022 California sales support express aiming, while Tipsy New York and Neville highlight Tipsy New York's lack of sales since 2022.  (*See* Opp'n 4–5; Reply 4–5.)

In *Herbal Brands*, one factor the Ninth Circuit identified as relevant to the regular course of business analysis is "the defendant's total volume of online sales including sales outside the forum."  *Herbal Brands*, 72 F.4th at 1094.  Elsewhere in that case, the Ninth Circuit stated that "the outcome of the express-aiming inquiry does not depend on the number of sales made to customers in the forum," and "[i]nstead of taking on an arbitrary line-drawing task," the inquiry "require[s] only that the sale must occur in the defendant's regular course of business."  *Id.* at 1095.  Thus, courts look to the total volume of online sales of the business *as a whole*—not those solely made in the forum state—to determine whether the type of sales made in the forum state are in the regular course of business.  *See Oceanside Health Prods., LLC v. Dvir Deri, LLC*, No. 23-55481, 2024 WL 2269270, at *2 (9th Cir. May 20, 2024) (rejecting argument that personal jurisdiction does not exist where plaintiff "does not allege Defendants' sales . . . *into California* occurred in their regular course of business . . . . because the relevant inquiry for express aiming is whether selling these products . . . occurred as part of Defendants' regular course of business—that is, the total volume of online sales, both in and out of the forum"); *Airhawk Int'l, LLC v. Air Seat Innovations LLC*, No. 3:23-CV-1068-AGS-BLM, 2024 WL 4048863, at *3 (S.D. Cal. Sept. 4, 2024) (holding that defendants only having sold nineteen products, representing 0.175% of total sales in the forum state, "is irrelevant" because the "'number of sales made to

customers in the forum' does not matter for" the regular course of business analysis (quoting *Herbal Brands*, 72 F.4th at 1095)).

Here, there can be no dispute that sales of wine and related products are part of Tipsy New York's regular course of business.  (*See* Neville Decl. ¶ 11 (stating Tipsy New York "has a website, Shoptipsy.com, which offers various wines, gifts, spirits, and sake for purchase and shipment all over the United States depending on the regulation of a particular state").)  Tipsy New York also does not contest that it made California sales before 2022.  (Neville Decl. ¶¶ 20–21.)  Instead, Tipsy New York and Neville argue that the relevant time period is from 2022 to the present—when Tipsy New York made zero such transactions with California residents—and that it should be credited with taking "an extra step and intentionally avoid[ing] sales from Californians by telling them they do not ship wines in California."  (Mot. 17.)  While potentially relevant to other factors within the personal jurisdiction inquiry, *see Impossible Foods*, 80 F.4th at 1098, this does not alter the express aiming analysis.  Tipsy New York and Neville offer no case law to support a contrary conclusion.  (*See* Mot.; Reply.)  Tipsy New York sells wine and other goods (including on its website) as part of its regular course of business and made such sales to California residents.  Therefore, Tipsy New York's California sales satisfy the regular course of business requirement.  *See Airhawk Int'l*, 2024 WL 4048863, at *3 ("If anything, these California transactions over multiple years show that the online sales were not truly isolated and thus were in the regular course of business." (internal quotation marks omitted)).

                    b.  Control

The parties also dispute whether Tipsy New York and Neville exercised "some level of control over the ultimate distribution of its products beyond simply placing its products into the stream of commerce."  *Herbal Brands*, 72 F.4th at 1094.  Tipsy New York and Neville assert that they "exercise[d] control to avoid shipments to California" starting in 2023.  (Mot. 17.)  If true, then the converse is as well: prior to 2023, Tipsy New York and Neville exercised control by permitting sales and shipments to California

and using a third-party processing system to effectuate such sales and shipment. (Neville Decl. ¶ 19); *see Herbal Brands*, 72 F.4th at 1094–95 ("Defendants exercised control over distribution: they created and maintained a distribution network that reached the relevant forum by choosing to operate on a universally accessible website that accepts orders from residents of all fifty states and delivers products to all fifty states.").  Tipsy New York and Neville need not have personally delivered the goods themselves.  *Herbal Brands*, 72 F.4th at 1092 n.4 ("Although Defendants are removed from the process of handling orders, the use of [third-party] fulfillment service to handle shipping logistics does not alter our jurisdictional analysis any more than a seller's use of the post office to ship its products would affect the inquiry.").

Having found that Tipsy New York "sold products to [California] residents via an interactive website in their regular course of business and causes those products to be delivered to the forum," the Court finds that Tipsy New York expressly aimed its conduct at California.[4]  *Id.* at 1095.

### 3.  *Harm Suffered in California*

The purposeful direction test's third prong "asks whether the intentional acts caused harm that the defendant knows is likely to be suffered in the forum state."  *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 744 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015).  In the trademark infringement context, courts typically find this prong satisfied where a plaintiff alleges that a defendant knew of a potential dispute connected to the forum state.  For example,

---

[4] As Tipsy California and Ito ultimately fail to show specific personal jurisdiction exists over Tipsy New York, the Court need not—and does not—decide whether Tipsy New York's California activities would be sufficient to support this Court's personal jurisdiction over Neville.

where a defendant knew a plaintiff resided in the forum state and intentionally infringed on their trademark,[5] or had notice of potential dispute from a cease-and-desist letter.[6]

Tippsy California and Ito make no such allegations here.  While Tippsy California and Ito assert a cause of action for trademark infringement, they do not allege that Tipsy New York and Neville's infringement was done intentionally, willfully, or knowingly.  (*See* Compl. ¶¶ 54–57.)  Tippsy California and Ito's Complaint contains no allegations that Tipsy New York and Neville even knew of the existence of Tippsy California, Ito, and their trademark when Tipsy New York and Neville were still selling goods to California residents.  (*See* Compl.; Neville Decl. ¶ 25 (declaring that Neville received a call regarding Tippsy California in November 2023, after Tipsy New York and Neville had ceased California wine sales).)  And Tippsy California and Ito have not alleged they made Tipsy New York and Neville aware of potential infringement through cease-and-desist letters.  (*See* Compl.)  While Tipsy New York and Neville sent such letters to Tippsy California and Ito, (Neville Decl. ¶¶ 25–26), Tipsy New York and Neville did so only *after* they had ceased California wine sales.  As the Ninth Circuit has explained, "[W]ithout the letters Defendants might not have known that Plaintiff[s] would be harmed in" the forum state.  *Herbal Brands*, 72 F.4th at 1091 n.2.  Here, Tipsy New York and Neville had no such notice.

---

[5] *See, e.g.*, *Panavision Int'l., L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (finding prong met where plaintiff alleged defendant "engaged in a scheme to register [plaintiff's] trademarks . . . for the purpose of extorting money from" plaintiff); *Proximo Spirits, Inc. v. Green Lake Brewing Co., LLC*, No. 2:22-cv-02879-SPG (SKx), 2022 WL 17224545, at *7 (C.D. Cal. Sept. 9, 2022) (finding prong met where defendant was familiar with plaintiff and plaintiff alleged defendant "willfully infringed Plaintiff's mark in California by intentionally selling the alleged infringing beer product in the forum state"); *Activision Publ'g Inc. v. Activision TV Inc.*, No. 2:12-cv-08964-SVW (JEMx), 2013 WL 1003546, at *5 (C.D. Cal. Feb. 25, 2013) ("[I]t was foreseeable that such harm would be exacted in California, the place where Plaintiff was known by Defendants to reside.").

[6] *See, e.g.*, *Herbal Brands*, 72 F.4th at 1091 & n.2 (finding cease-and-desist letters provided notice to defendants that their actions were causing harm in the forum state); *San Diego Cnty. Credit Union*, 65 F.4th at 1035 (defendant's filing of a cancellation petition with the Trademark Trial and Appeal Board alleging the registration for the mark (used solely in the forum state) must be cancelled satisfied the first prong).

This case is unlike *Impossible Foods*.  There, in the declaratory judgment context, the Ninth Circuit stated that "there is no further requirement that the defendant have specific knowledge that its in-state conduct would eventually cause harm in that jurisdiction" where "defendant's conduct indisputably occurred *in* the forum state—and where the defendant was in fact *based there*."  *Impossible Foods*, 80 F.4th at 1090. Here, Tippsy California and Ito do not allege that Tipsy New York and Neville's conduct occurred in California or that Tipsy New York and Neville were based in California.  Because Tipsy New York and Neville have not "operated from within" California, the Court does not focus on their "entire course of dealing" to "establish sufficient minimum contacts."  *Id.*  As the Ninth Circuit noted, "[I]t is hardly novel to say that a company that operated from California for years availed itself of that state's privileges."  *Id.*  Tippsy California and Ito make no such allegation.  *Impossible Foods* is thus inapplicable here.

The Court finds that Tippsy California and Ito have not alleged that Tipsy New York and Neville caused harm that they knew was likely to be suffered in California. Thus, Plaintiffs fail to satisfy the *Calder* effects test, and this Court lacks personal jurisdiction.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 807 (9th Cir. 2004) (concluding personal jurisdiction analysis after finding plaintiff failed to satisfy first prong).

**B.    Jurisdictional Discovery**

Tippsy California and Ito seek discovery "if the Court is considering granting the motion."  (Opp'n 8.)  In particular, they identify the following fact issues:

- The identity of Tipsy New York's California licenses importer;
- Whether Tipsy New York's California sales were "single bottles, cases of wine, or truck loads;"
- Whether California consumers made purchases as part of the Tipsy New York wine club; and

- The extent of Tipsy New York's marketing to California customers who were part of Tipsy New York's wine club. (*Id.* at 8–9.)

Whether to grant jurisdictional discovery is subject to the Court's discretion. *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) ("[R]efusal [to grant discovery] is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction."). "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (alterations omitted).

Here, discovery is unnecessary because none of the identified facts would alter the fatal flaw in the personal jurisdiction analysis: Tippsy California and Ito fail to allege that Tipsy New York and Neville's conduct caused foreseeable harm in California. Accordingly, the Court **DENIES** Tippsy California and Ito's request for jurisdictional discovery.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion. (ECF No. 16.) The action is dismissed without prejudice.

**IT IS SO ORDERED.**

November 14, 2024

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**